**E-FILED**
Thursday, 13 April, 2006  09:26:48 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GENERAL ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3239 |
| | ) | |
| HONEYWELL INTERNATIONAL, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Honeywell International, Inc.'s Motion to Dismiss (d/e 5) (Motion to Dismiss). According to the Complaint (d/e 1), Honeywell International, Inc. (Honeywell) benefitted from service transactions performed on its behalf in Illinois by General Electric Company (GE) and its predecessors-in-interest. The Complaint further alleges that Honeywell failed to pay the proper amount of tax on the transactions.  GE seeks to recover from Honeywell $5,384,002.00 that GE paid to the Illinois Department of Revenue (Department) to settle tax deficiency claims relating to the relevant

transactions.  Honeywell has filed a Motion to Dismiss, asserting that GE fails to state a claim.  GE is a New York corporation with its principal place of business in New York.  Honeywell is a Delaware corporation with its principal place of business in New Jersey.[1]  The amount in controversy exceeds $75,000.00; thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.  For the reasons set forth below, the Motion to Dismiss is allowed, in part, and denied, in part.

## BACKGROUND

The following facts are taken from the allegations of the Complaint. Garrett Aviation, originally known as AirResearch Aviation, has provided services for corporate and general aviation customers since at least 1946. These services include airframe and engine inspections, maintenance and repair, avionics installations, and interior modifications.  Since 1976, Garrett Aviation has operated a facility in Springfield, Illinois.

Prior to May 26, 1994, Honeywell owned and operated Garrett Aviation, including the Springfield, Illinois facility.  At that time, Honeywell was in the business of manufacturing and servicing certain aircraft engines.

---

[1]Honeywell is the successor-in-interest to AlliedSignal, Inc.  For consistency, the Court will refer to both entities as Honeywell.

2

Among other things, Garrett Aviation's Springfield facility performed required periodic inspections, maintenance, repair and overhaul services (engine services) on Honeywell engines. During the time that Honeywell owned and operated Garrett Aviation, Honeywell performed engine services on Honeywell engines on an "as needed" time and material basis, or under maintenance agreements, known as Maintenance Service Plan Agreements (MSP Agreements). Under the MSP Agreements, the owner or operator of a Honeywell engine paid Honeywell a specific dollar amount for each hour of engine operating time. In exchange, Honeywell provided a defined set of inspections, maintenance, and repair services on the engines (MSP Services) and provided parts associated with the services at no extra charge to the owner/operator. During the time that Honeywell owned Garrett Aviation, Honeywell provided MSP Services to MSP Agreement customers through Garrett Aviation.

On May 26, 1994, Honeywell sold Garrett Aviation to a wholly-owned subsidiary of CFC Aviation Services, L.P. (CFC). In connection with the sale, Honeywell and CFC entered into an Operating Agreement, dated June 30, 1994, (Operating Agreement) which authorized Garrett Aviation to perform engine services on Honeywell engines and set out the terms under

which such work would be performed.  Honeywell designated CFC as a provider of MSP and non-MSP services on Honeywell engines.  After the Operating Agreement was executed, Honeywell no longer provided MSP services to its MSP Agreement customers directly, but rather relied on CFC and its successors-in-interest to do so.  Between 1994 and 2004, Honeywell stationed an employee at Garrett Aviation's Springfield facility to oversee and coordinate the provision of MSP services to Honeywell customers.

In May 1996, CFC sold Garrett Aviation to a wholly-owned subsidiary of UNC, Inc.  In connection with this sale, all of CFC's rights and obligations under the Operating Agreement, absent certain immaterial exceptions, were assigned to UNC.

In September 1997, Garrett Aviation was purchased by a wholly-owned subsidiary of GE.  According to the Complaint, incident to the purchase, GE acquired all of UNC's rights and obligations under the Operating Agreement.  The Complaint further alleges that GE assumed certain "provisional liabilities of CFC and UNC related to the Garrett Aviation business," including the tax at issue in this lawsuit.  Complaint, ¶ 15.  On August 27, 2004, GE sold Garrett Aviation to an affiliate of The Carlyle Group.  According to the Complaint, Garrett Aviation continued to

provide MSP and non-MSP services for Honeywell engines through the date that the Complaint was filed.

Since July 1994, Garrett Aviation has invoiced for MSP transactions differently than for non-MSP transactions.  For MSP transactions, Garrett Aviation invoiced Honeywell according to a formula set out in the Operating Agreement.  For non-MSP transactions, Garrett Aviation invoiced the end user of the engine directly for time and material.  Also since July 1994, Honeywell has supplied Garrett Aviation with a consigned inventory of parts that Garrett Aviation uses in performing services on Honeywell engines.  A portion of the consigned inventory was housed at the Springfield facility.

When a consigned part was used in performing MSP services, invoicing occurred between Honeywell and Garrett Aviation.  Honeywell would invoice Garrett Aviation for the part at the time it was removed from the consigned inventory.  Garrett Aviation then invoiced Honeywell for the part at the time it invoiced Honeywell for the MSP services that were performed.  When a consigned part was used in connection with non-MSP services, Honeywell generally invoiced Garrett Aviation for the part at the time it was removed from the consigned inventory, and Garrett Aviation

then invoiced its customer for the part at the time it invoiced for the non-MSP services.

Illinois does not tax services, but the State does impose a Service Occupation Tax, or SOT, on the retail selling price of tangible personal property transferred incident to the sale of services.  <u>See</u> 35 ILCS § 115/3. This tax is imposed upon "all persons engaged in the business of making sales of service (referred to as 'servicemen')."  <u>Id</u>.  The Service Occupation Tax "shall be paid to the Department by any serviceman transferring tangible personal property as an incident to a sale of service taxable under this [Service Occupation Tax] Act."  35 ILCS § 115/3-40.

Illinois also imposes a Service Use Tax, or SUT, "upon the privilege of using in this State real or tangible personal property acquired as an incident to the purchase of a service from a serviceman."  35 ILCS § 110/3.  The Service Use Tax is imposed on the users of the property acquired incident to the purchase of services.  <u>Id</u>.  Under 35 ILCS § 110/3-40, the Service Use Tax:

> shall be collected at the time of purchase in the manner prescribed by the Department from the user by a serviceman maintaining a place of business in this State or by a serviceman authorized by the Department under Section 7 of this Act, and the tax shall be remitted to the Department as provided in

Section 9 of this Act.

The tax imposed by this Act that is not paid to a serviceman under this Section shall be paid to the Department directly by any person using the property within this State as provided in Section 10 of this Act.

35 ILCS § 110/3-40.

Thus, a serviceman is required to collect the Service Use Tax from his customer and remit it to the Department.  However, the serviceman may retain the collected Service Use Tax if he has already paid Service Occupation Tax for the transaction to the Department.  35 ILCS § 110/8.

According to the Complaint, in non-MSP transactions, Garrett incurred and paid Service Occupation Tax to the Department and collected the corresponding Service Use Tax from the end user customer.  The Complaint alleges that, in MSP transactions, the parties intended for Honeywell to pay the applicable tax directly to the Department.  GE alleges that Honeywell provided Garrett with Exemption Certificates to memorialize this intent.  According to the Complaint:

> The first Exemption Certificate, dated February 27, 1998, applied to the period February 28, 1998 through May 4, 2000. The second Exemption Certificate, dated May 4, 2000, applied to the period May 5, 2000 to the present.  In a letter to Garrett Aviation dated August 12, 2002, which Honeywell asked Garrett to accept in lieu of an Exemption Certificate, Honeywell

represented that for the period July 1, 1994 through February
28, 1998, MSP Transactions were treated by Honeywell and
Garrett Aviation in the same manner as MSP Transactions
covered by the February 27, 1998 Exemption Certificate.

Complaint, ¶ 40.   Copies of the August 12, 2002. letter and the two

Exemption Certificates are attached to the Complaint as exhibits.   See

Complaint, Exs. 1a, 1b, & 1c.  Each Exemption Certificate provides that it

will be a part of each order which Honeywell would place after the

Certificate's issuance.  The Certificates state that AlliedSignal or Honeywell

"is directly paying the tax," and describe the products to be purchased as

"spare parts and repair and overhaul services for GAS turbine engines."

Complaint, Exs. 1a & 1b.  The August 12, 2002, letter states in total:

> Because it is against company policy to backdate any
> documents, I cannot issue an exemption certificate covering the
> period of June 1, 1996 through February 28, 1998.  However,
> business transactions between Honeywell International
> (previously known as AlliedSignal, Inc.) and Garrett Aviation
> during the above time period, were the same for the period of
> the attached exemption certificate (dated February 27, 1998).
>
> If you have any questions, please don't hesitate to give me a call.

Complaint, Ex. 1c.  GE alleges that despite these representations that

Honeywell would pay the tax directly to the proper taxing authority,

Honeywell failed to pay the correct amount of tax for the MSP transactions.

On December 29, 2000, the Department issued a Notice of Tax Liability to Garrett Aviation, seeking $3,727,783.00 in occupation tax, $39,454.00 in use tax, a late payment penalty of $573,471.00, and interest in the amount of $1,743,258.00 for an initial audit period of July 1, 1994 to May 31, 1996.  General Electric Company's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (d/e 9) (Memorandum in Opposition), Ex. 5, Notice of Tax Liability, dated December 29, 2000.[2] According to the Complaint, the amounts set out in the Notice of Tax Liability included approximately $2,500,000.00 in additional Service Occupation Tax and interest based on transfers of consigned parts in MSP service transactions for the initial audit period.  Complaint, ¶ 51.  The Department asserted that Garrett Aviation should have paid Service Occupation Tax on the value of consigned parts used in connection with the performance of MSP Services.  The Department deemed that Garrett Aviation had purchased the parts from Honeywell and then resold them to Honeywell in connection with the performance of MSP services.  Id., ¶ 52.

---

[2]The Court may consider the Notice of Tax Liability without converting the Motion to Dismiss into a motion for summary judgment under Fed.R.Civ.P. 12(c) because this document is referred to in the Complaint and central to GE's claims.  See Menominee Indian Tribe of Wisconsin v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998).

In February 2001, GE, on behalf of Garrett Aviation, filed a Protest and Request for Hearing in response to the Notice of Tax Liability. A Department Administrative Law Judge (ALJ) upheld the Notice in May 2003. The Department's Director accepted the ALJ's recommendation on June 13, 2003. In July 2003, GE appealed this decision to the Illinois Circuit Court.

By letter dated October 31, 2003, GE notified Honeywell of the Department's initial tax assessment, informing Honeywell that GE was challenging the assessment, but if its challenge did not succeed, GE would bill Honeywell for the taxes, interest, and penalties. The letter further informed Honeywell that the Department was conducting an audit relating to sales and use tax for the tax period from June 1, 1996, to December 31, 2001. The letter outlined an Illinois tax amnesty program that would apply and asked Honeywell to inform GE whether it wished Garrett Aviation to make payment under amnesty on its behalf. By letter dated November 7, 2003, Honeywell denied liability for "any Illinois sales or use taxes, interest, and penalties that have been or may in the future be assessed against Garrett Aviation Services." Complaint, Ex. 3, November 7, 2003, Letter from Paul H. Brownstein to Ramon Nunez.

The Department subsequently concluded audits for the tax periods June 1, 1996, to December 31, 2001, and January 1, 2002, through September 30, 2004. The Department informed GE that it intended to issue Notices of Proposed Tax Liability for these periods in an amount not less than $15,130,000.00, plus interest in the amount of $4,960,000.00 and penalties of $3,260,000.00. GE entered into settlement negotiations with the Department regarding its pending appeal and the amounts from the subsequent audits. In November 2004, GE and the Department reached a proposed settlement under which GE would pay the Department $4,150,179.00 in Service Occupation Tax, plus accrued interest in the amount of $1,233,823.00.[3]

GE notified Honeywell of the proposed settlement by letter dated November 23, 2004. GE provided Honeywell with a copy of the proposed settlement agreement and advised Honeywell that GE intended to sign the proposed agreement unless Honeywell responded within 10 days. The proposed settlement agreement provided as follows:

Nothing in this Settlement Agreement is intended to extinguish

---

[3]Under the proposed settlement agreement, GE would also pay the Department $629,000.00 plus interest in use tax relating to Garrett's purchase of fixed assets. This amount is not at issue in the present case.

or modify the primary liability of AlliedSignal, k/n/a Honeywell International Inc. to pay the appropriate taxes relating to the MSP and Fixed Assets Issues, or to bar or frustrate GE's efforts to recover from Honeywell under any applicable theory, an amount equal to the Service Occupation Tax paid by GE in the Settlement Payment . . . .

Complaint, Ex. 4, p. 20, Settlement Agreement, p. 4.  Moreover, GE's letter informed Honeywell that if and when GE settled with the Department and paid the taxes, GE intended to recover those payments from Honeywell. Honeywell responded by letter dated December 2, 2004, again denying any liability for the taxes, interest, or penalties.

GE and the Department signed the Settlement Agreement, effective December 7, 2004.  The Settlement Agreement was the same, in all material ways, as the proposed settlement agreement.  The Settlement Agreement states that the December 29, 2000, Notice of Tax Liability sought additional Service Occupation Tax due as a result of transfers relating to" (1) services performed on aircraft that were subsequently delivered to their owners at out-of-state locations and (2) MSP services.  According to the Settlement Agreement, the Department asserted claims for Service Occupation Tax relating to MSP services of at least $15.13 million.  The parties agreed to settle all disputes between them except for the out-of-state

delivery issue for $6,200,000.00, which included $4,150,179.00 in Service Occupation Tax, plus accrued statutory interest.  GE made the settlement payment on December 17, 2004.

GE filed its Complaint in the instant lawsuit on September 2, 2005, alleging a state law use tax claim under 35 ILCS § 110/3-40 (Count 1), equitable subrogation (Count 2), implied indemnity (Count 3), negligent misrepresentation (Count 4), equitable estoppel (Count 5), and unjust enrichment (Count 6).  Honeywell moves to dismiss, asserting that GE's Complaint is barred by collateral estoppel and the applicable statute of limitations.  In the alternative, Honeywell raises various specific challenges to Counts 1, 3, 4, 5, and 6.  As set forth below, Counts 3 and 4 are dismissed.  Honeywell's Motion to Dismiss is denied in all other respects.

<u>ANALYSIS</u>

Honeywell moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  For purposes of the Motion to Dismiss, the Court must accept as true all well-pleaded factual allegations contained in the Complaint and draw all inferences in the light most favorable to the Plaintiff.  <u>Hager v. City of West Peoria</u>, 84 F.3d 865, 868-69 (7th Cir. 1996); <u>Covington Court, Ltd. v. Village of Oak Brook</u>, 77 F.3d 177, 178 (7th Cir. 1996).  A claim should not

be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts that would entitle him to relief.  Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996).

The parties have submitted numerous documents in connection with their briefs on the Motion to Dismiss.  Many of these items are not properly before the Court at this stage of the proceedings.  Any documents submitted that are not specifically referenced in this Order were not considered by the Court.  Moreover, because the Court can adequately analyze the issues raised based on the parties' written submissions, Honeywell's request for oral argument on its Motion to Dismiss is denied.

A.   Collateral Estoppel

Honeywell contends that all of GE's claims rely upon the specific factual allegation that GE was the seller in the MSP transactions and thus owed and paid Service Occupation Tax while Honeywell was the purchaser that owed, but failed to pay, Service Use Tax.  Honeywell asserts that GE is estopped from making this factual allegation by the ALJ's decision and the Department's Notice of Decision adopting this decision.  According to Honeywell, the ALJ determined that, in connection with the MSP transactions, GE was a purchaser of property subject to use tax on its

14

purchase. Honeywell has attached the ALJ's decision and the Department's acceptance as exhibits to its Motion to Dismiss. <u>Motion to Dismiss</u>, Ex. 1, p. 2, <u>Notice of Decision</u>; <u>Motion to Dismiss</u>, Ex. 1, pp. 3-26, <u>Recommendation for Disposition dated May 19, 2003</u> (ALJ's decision). The Court may consider these documents without converting the Motion to Dismiss into a motion for summary judgment as set forth in Fed.R.Civ.P. 12(c) because they are referred to in the Complaint and central to GE's claims. <u>See</u> <u>Menominee Indian Tribe of Wisconsin</u>, 161 F.3d at 456. Furthermore, the Court may properly take judicial notice of the documents, which are matters of public record, and "[a] court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment." <u>See id</u>. However, as set forth below, Honeywell fails to show that GE's claims in the present suit are barred by collateral estoppel.

The ALJ identified the second issue for his consideration to be: "Whether Garrett's Transfers Pursuant To Its Operating Agreement With AlliedSignal Are Subject to SOT." <u>ALJ's decision</u>, p. 41. In analyzing this issue, the ALJ found as follows:

The relationship between Garrett and AlliedSignal does not

> involve Garrett's sales or transfers of goods to AlliedSignal, incident to Garrett's agreement to perform services for AlliedSignal. Instead of hiring Garrett to transfers [sic] goods to it, and which AlliedSignal would then transfer to others, AlliedSignal hired Garrett to provide services and transfer goods directly to those who purchased maintenance service plans from AlliedSignal. The agreement between Garrett and AlliedSignal was that Garrett would purchase, from AlliedSignal, the goods Garrett used when performing services pursuant to those maintenance plans, and then install such goods onto aircraft owned by MSP customers, in Illinois. AlliedSignal would then reimburse Garrett for its services and expenses–including Garrett's parts expenses–based on a variety of factors, including an agreed-upon percentage of the list price of the parts Garrett purchased from AlliedSignal. Both Garrett and AlliedSignal acknowledge, in the Operating Agreement, that Garrett purchased the Designated AlliedSignal Engine and General Products that AlliedSignal supplied it with, on consignment, and that Garrett then used by installing them into aircraft owned by MSP customers. The plain terms of Garrett's agreement with AlliedSignal establish that AlliedSignal was Garrett's vendor of the property that Garrett then transferred incident to the completion of a maintenance agreement.

Id. at 44 (internal citations omitted). Thus, the ALJ determined that Garrett purchased goods for transfer, in Illinois, incident to the completion of a maintenance agreement.

The Illinois Use Tax Act provides:

> Tangible personal property purchased by a serviceman, as defined in Section 2 of the Service Occupation Tax Act, is subject to the tax imposed by this Act when purchased for transfer by the serviceman incidental to completion of a maintenance agreement.

35 ILCS § 105/3-75.  The ALJ recognized that the MSPs were between AlliedSignal and its customers, not between Garrett and the customers, but concluded that this fact was immaterial under the express terms of § 3-75. Thus, the ALJ concluded that § 3-75 imposed a use tax on Garrett for the transactions at issue.  The ALJ stated "even though I disagree with the basis for the audit's determination that Garrett owes use tax on its MSP work, I agree that Garrett is, in fact, subject to use tax on its purchase and use of such property in Illinois."  ALJ decision, p. 45 (internal citation omitted).

In conclusion, the ALJ stated, "[s]ince Garrett, a serviceman, purchased goods for transfer incident to the completion of a maintenance agreement, it was obliged to pay use tax either to its supplier, AlliedSignal, or to the Department."  ALJ decision, p. 53.  The ALJ determined that the Department had correctly calculated the amount of applicable tax due and recommended "that the Director finalize the NTL and assessment as issued, with interest to accrue pursuant to statute."  Id. at 54.  The Department accepted the ALJ's recommendation on June 13, 2003.

Honeywell asserts that GE's claims are collaterally estopped by this decision.  Administrative decisions that are adjudicatory, judicial, or quasi-judicial in nature may give rise to collateral estoppel.  Arvia v.

17

Madigan, 809 N.E.2d 88, 97 (Ill. 2004).

> The doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined.

Nowak v. St. Rita High School, 757 N.E.2d 471, 477 (Ill. 2001).  At a minimum, a party invoking the doctrine of collateral estoppel must show "(1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." Id. at 478 (emphasis in original).  "Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment."  Id.

In the present case, Honeywell fails to meet the first necessary element of collateral estoppel.  In order for an issue to have been previously decided,

it must have been actually litigated and determined and material to the determination.  See Nowak, 757 N.E.2d at 477.  Honeywell, as the party relying on collateral estoppel, "has the heavy burden of showing with certainty and clarity what the prior judgment determined."  Bagnola v. SmithKline Beecham Clinical Laboratories, 776 N.E.2d 730, 741 (Ill. App. 1st Dist. 2002).  While the ALJ's analysis characterized the tax imposed on Garrett as a § 3-75 use tax , the ALJ's final recommendation was to "finalize the NTL and assessment as issued, with interest to accrue pursuant to statute." ALJ's Decision, p. 54.  The NLT expressly assessed $3,727,783.00 in occupation tax.  Memorandum in Opposition, Ex. 5, Notice of Tax Liability, dated December 29, 2000.  The Department's Notice of Decision accepted the ALJ's recommendation without clarification.   Given this inconsistency, Honeywell cannot show, with certainty and clarity, that the prior judgment determined that the tax at issue was use tax owed by Garrett as the purchaser.  Thus, collateral estoppel does not bar GE's claims.

B.    Statute of Limitations

Honeywell asserts that GE's claims are indemnity claims subject to a two-year statute of limitation under 735 ILCS § 5/13-204.  Section 13-204 sets forth the statute of limitations for contribution and indemnity actions.

It provides, in part, as follows:

> (a) In instances where no underlying action seeking recovery for injury to or death of a person or injury or damage to property has been filed by a claimant, no action for contribution or indemnity may be commenced with respect to any payment made to that claimant more than 2 years after the party seeking contribution or indemnity has made the payment in discharge of his or her liability to the claimant.

> (b) In instances where an underlying action has been filed by a claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later.

735 ILCS § 5/13-204.

GE argues that all of its claims except the implied indemnity claim in

Count 3 fall under the five-year statute of limitations set out in 735 ILCS

§ 5/13-205.  Under § 5/13-205, absent inapplicable exceptions:

> actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

GE further asserts that the implied indemnity claim is timely under 735

ILCS § 5/13-204(a).  Honeywell responds by asserting that GE's claims are untimely under § 13-205's five-year statute of limitations as well.  As set forth below, Honeywell's arguments fail.

GE concedes that at least its implied indemnity claim is governed by 735 ILCS § 5/13-204, and the Court thus begins its analysis with this statute.  Subsections (a) and (b) of § 5/13-204 both provide for a two-year statute of limitations; however, the accrual date differs in each subsection. Subsection (a), which applies "[i]n instances where no underlying action seeking recovery for injury to or death of a person or injury or damage to property has been filed by a claimant," bars indemnity claims commenced more than two years after the party seeking indemnity "has made the payment in discharge of his or her liability to the claimant."  735 ILCS § 5/13-204(a).  Subsection (b), which applies "[i]n instances where an underlying action has been filed by a claimant," bars indemnity claims "commenced more than 2 years after the party seeking . . . indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for . . . indemnity, whichever period expires later."  735 ILCS § 5/13-204(b).

GE asserts that its implied indemnity claim falls under § 5/13-204(a).
Honeywell asserts that GE's claims fall under § 5/13-204(b).  To resolve this
dispute, the Court must determine whether the proceedings between the
Department and GE constituted an "underlying action" for § 5/13-204
purposes.  Based on the plain language of § 5/13-204, the Court finds that
it does not.  Subsection (a) expressly applies where no underlying action
seeking recovery for injury to or death of a person or injury or damage to
property has been filed by a claimant.  Honeywell argues that an underlying
action exists, specifically "the action brought by the Illinois Department of
Revenue," which removes the claims from subsection (a).  Defendant's
Memorandum, p. 13.  The Department's December 29, 2000, Notice of Tax
Liability, however, does not constitute the commencement of an action
seeking recovery for injury to or death of a person or injury or damage to
property.  The Notice of Tax Liability sought to recover unpaid tax, and the
administrative proceeding did not commence until GE protested the Notice.
Similarly, it was GE, not the Department, that brought the Circuit Court
action.  Honeywell fails to identify any underlying action brought by a
claimant seeking recovery for injury to or death of a person or injury or
damage to property.  In the absence of such an underlying action, § 5/13-

204(a) applies.  Therefore, GE had two years from December 17, 2004, the date of the settlement payment, to file indemnity claims.  GE's indemnity claim, filed September 2, 2005, is timely.  To the extent § 5/13-204 applies to the remaining counts of the Complaint, they would be timely as well for the reasons set forth above.

To the extent 735 ILCS § 5/13-205 governs GE's claims other than the implied indemnity claim in Count 3, Honeywell fails to show that the claims are time-barred.  Under 735 ILCS § 5/13-205, an action must be commenced within five years after the cause of action accrues.  A cause of action accrues under § 5/13-205, "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused."  Vector-Springfield Properties, Ltd. v. Central Illinois Light Co., 108 F.3d 806, 809 (7th Cir. 1997) (internal quotations and citation omitted) (applying Illinois law).

Honeywell asserts that GE's cause of action accrued by at least May 1998, relying on Auditor's Comments, dated December 4, 2000 (Auditor's Comments).  GE submitted the Auditor's Comments as an exhibit to its Memorandum in Opposition to the Motion to Dismiss.  See Memorandum in Opposition, Ex. 1, Auditor's Comments.  The Auditor's Comments,

however, are not properly before the Court at the Motion to Dismiss stage because they are neither matters of public record nor referred to in the Complaint.  See Menominee Indian Tribe of Wisconsin, 161 F.3d at 456. Thus, the Court will exclude them from its consideration.

Honeywell bases its entire § 5/13-205 argument on the Auditor's Comments.  Absent the Auditor's Comments, Honeywell fails to identify the point at which GE knew or reasonably should have known of its injury and that it was wrongfully caused.  Honeywell's statute of limitations argument as it relates to § 5/13-205, therefore, fails.

Honeywell also relies on the Auditor's Comments to argue, in its reply brief, that GE's equitable claims are barred by GE's own conduct.  Because the Auditor's Comments are not properly before the Court, Honeywell's argument fails.  Honeywell's request to dismiss GE's equitable claims in their entirety based on GE's own conduct is denied.  The Court turns next to Honeywell's arguments for dismissal relating to specific counts of the Complaint, noting that Honeywell has not raised a specific argument for dismissal of GE's equitable subrogation claim set out in Count 2.

24

C.    Count 1 – Use Tax Claim under 35 ILCS § 110/3-40

In Count 1, GE asserts that Honeywell is obligated to pay SUT under 35 ILCS § 110/3-40 equal to the amount of SOT that GE paid the Department pursuant to the Settlement Agreement.  Honeywell asserts that Count 1 should be dismissed because no private right of action exists under § 110/3-40.  As set forth below, the Court finds that an implied private right of action exists, and thus, Honeywell's request to dismiss Count 1 is denied.

It is not necessary for GE to show an express legislative intent to create a private right of action.  The Illinois Supreme Court has recognized that, when a statute is enacted to protect a particular class of individuals, courts may imply a private right of action even if no express remedy has been provided in the statute.  Sawyer Realty Group, Inc. v. Jarvis Corp., 432 N.E.2d 849, 852 (1982).  In order to determine whether an implied private right of action exists in a statute that does not expressly provide one, Illinois courts consider a number of factors, including whether plaintiff is a member of a class for whose benefit the statute was enacted, whether plaintiff's injury is one the statute was designed to prevent, whether a private right of action is consistent with the underlying purpose of the statute, and whether a private right of action is necessary to provide an adequate remedy for

25

violations of the statute.  <u>Corgan v. Muehling</u>, 574 N.E.2d 602, 609 (1991).
In the present case, these factors weigh in favor of recognizing an implied
private right of action under § 110/3-40.

Under the relevant statutory scheme, it is clear that the user, not the
serviceman, is the party designed to ultimately bear the burden of the tax
imposed on the retail selling price of tangible personal property transferred
incident to the sale of service.  Section 110/3 imposes a Service Use Tax
upon users of property acquired incident to the purchase of services from a
serviceman.  35 ILCS § 110/3.  Section 115/3 imposes a corresponding
Service Occupation Tax on servicemen.  35 ILCS § 115/3.  The serviceman
must pay the Service Occupation Tax directly to the Department.  35 ILCS
§ 115/3-40.  Service Use Tax, however, is to be collected at the time of
purchase from the user by the serviceman.   35 ILCS § 110/3-40.   A
serviceman who is required to collect Service Use Tax is liable to the
Department for the tax, whether or not it is actually collected.  35 ILCS §
110/8.  The serviceman must remit the Service Use Tax to the Department,
unless the serviceman has already paid the corresponding Service
Occupation Tax to the Department.  35 ILCS § 110/3-40; 35 ILCS § 110/8.
If the serviceman has already paid the corresponding Service Occupation

Tax, he "is relieved of the duty of remitting the [Service Use] tax to the Department." 35 ILCS § 110/8. Furthermore, if the Service Use Tax is not paid to the serviceman, the user must pay it to the Department directly. 35 ILCS § 110/3-40.

Clearly, the purpose of any taxing statute is to raise revenue for the government. Beyond this broad goal, the Service Use Tax and Service Occupation Tax Acts create a detailed framework which is by nature designed to ensure that users of property acquired incident to the purchase of services pay a tax on the privilege of using such property. In furtherance of this purpose, the Acts require a serviceman to collect Service Use Tax at the time of purchase for remittance to the Department, and the Acts impose a corresponding Service Occupation Tax on the serviceman which is to be paid directly to the Department. However, the Service Use Tax Act expressly allows a serviceman to retain collected Service Use Tax if the corresponding Service Occupation Tax has been paid to the Department. Thus, § 110/8, together with § 110/3-40, is designed to benefit servicemen who have paid Service Occupation Tax on a particular transaction. Under the allegations of the Complaint, GE falls into this group. Similarly, GE's injury, i.e., a serviceman being forced to bear the ultimate tax burden on

27

property transferred incident to the provision of services, is one that the Service Use Tax Act was designed to prevent.  A private right of action is also consistent with the underlying purpose of §§ 110/3-40 and 110/8, which expressly authorize servicemen to collect Service Use Tax and allow a serviceman to retain the Service Use Tax if he has paid the corresponding Service Occupation Tax.  A private right of action is necessary to provide an adequate remedy for violations of § 110/3 in cases such as this, because the tax statutes provide no remedy for a serviceman who has paid Service Occupation Tax on a transaction and is unable to collect the corresponding Service Use Tax.  Therefore, balancing all of the relevant factors, the Court finds that an implied private right of action exists for a serviceman, who has paid Service Occupation Tax to collect Service Use Tax under 35 ILCS § 110/3-40.  Honeywell's request to dismiss Count 1 is denied.

>    D.    Count 3 – Implied Indemnity

In Count 3, GE alleges that, under Illinois tax law, by providing the Exemption Certificates, Honeywell became primarily liable to pay the taxes on the MSP transactions.  GE further alleges that , by paying the settlement amount, GE discharged Honeywell's primary legal obligation, and thus, Honeywell has a duty implied in law to indemnify GE.  Honeywell moves

to dismiss Count 3, arguing that GE has failed to plead a recognized cause of action under Illinois law.  As set forth below, Honeywell's request to dismiss Count 3 is allowed.

A claim is properly dismissed if, after viewing the evidence in the light most favorable to the plaintiff, it is beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief.  In the present case, Honeywell contends that Illinois courts have limited implied indemnity claims to cases involving underlying torts or contracts, and GE has failed to pled facts sufficient to state a claim under either type.  See, e.g., Canadian Pacific Ry. Co. v. Williams-Hayward Protective Coatings, Inc., 2004 WL 2108413 (N.D. Ill. Sept. 21, 2004); Zielinski v. Miller, 660 N.E.2d 1289 (Ill.App. 3d Dist. 1995); Carrillo v. Jam Prods., 527 N.E.2d 964 (Ill.App. 1st Dist. 1988).  GE, relying on Hartigan v. Community Hosp. of Evanston, asserts that Illinois does not restrict implied indemnity claims to the extent argued by Honeywell.  Hartigan, 545 N.E.2d 226 (Ill.App. 1st Dist. 1989). Hartigan does, in fact, note that nothing in the relevant Illinois decisions eliminates the viability of implied non-tort indemnification in Illinois.  Id. at 232.  GE, however, fails to identify any factually similar case in which Illinois courts have recognized a claim for implied indemnity derived from

one party's action in paying another's legal obligation.  Furthermore, the Court is not convinced that Illinois courts would recognize a cause of action for implied indemnity under the facts as alleged in the Complaint.  Thus, the Court finds that, viewing the allegations in the light most favorable to GE, GE can prove no set of facts that would entitle it to relief, and Honeywell's request to dismiss Count 3 for failure to state a claim is allowed.

### E.   Count 4 – Negligent Misrepresentation

In Count 4, GE alleges that Honeywell provided Garrett with the Exemption Certificates that contained false information for the purpose of inducing Garrett to rely on the statements.  GE further asserts that, but for the Exemption Certificates, Garrett would have paid Service Occupation Tax on the MSP transactions and collected Service Use Tax from Honeywell.  GE asserts that it incurred damages of $4,150,179.00 in additional tax and $1,233,823.00 in statutory interest as a result of Honeywell's misrepresentation.

Honeywell asserts that GE's negligent misrepresentation claim is barred by the economic loss doctrine.  See Moorman Manufacturing Co. v. National Tank Co., 435 N.E.2d 443 (1982).  The economic loss doctrine

as set out by the Illinois Supreme Court generally prevents the recovery of purely economic loss in tort.  Illinois has recognized exceptions to the economic loss doctrine in several situations, including cases "where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions."  <u>Fireman's Fund Ins. Co. v. SEC Donohue, Inc.</u>, 679 N.E.2d 1197, 1199 (Ill. 1997).  GE's negligent misrepresentation claim, however, does not meet this exception, because there is no allegation that Honeywell was in the business of supplying information for the guidance of others in their business transactions.  GE fails to identify any other applicable exception to the economic loss rule.  Honeywell's request to dismiss Count 4 is allowed.

     F.    <u>Count 5 – Equitable Estoppel</u>

In Count 5, GE seeks to recover under an equitable estoppel theory.  In general, the doctrine of equitable estoppel provides, "where a person by his or her statements and conduct leads a party to do something that the party would not have done but for such statements and conduct, that person will not be allowed to deny his or her words or acts to the damage of the other party."  <u>Geddes v. Mill Creek Country Club, Inc.</u>, 751 N.E.2d

1150, 1157 (Ill. 2001). GE asserts that Honeywell is equitably estopped, based on the Exemption Certificates, from denying GE's right to recoup Service Use Tax from Honeywell corresponding to GE's settlement payment.

Honeywell moves to dismiss Count 5. Honeywell argues initially that, under Illinois law, equitable estoppel is a theory of defense and does not create a cause of action. See Nibeel v. McDonald's Corp., 1998 WL 547286 at *12 (N.D. Ill. Aug. 27, 1998) (citing Nationwide Mutual Ins. Co. v. Filos, 673 N.E.2d 1099, 1103 (Ill.App. 1st Dist. 1996)). In Nationwide Mutual Ins., upon which Honeywell relies, the Illinois Appellate Court noted that Illinois courts have "followed the general rule that the doctrine of estoppel cannot be used to create primary liability or to increase coverage provided under an insurance policy." Nationwide Mutual Ins. Co., 673 N.E.2d at 1103. As a judge in the Northern District of Illinois has recognized, however, several courts applying Illinois law that have addressed the issue outside of the insurance coverage context have recognized equitable estoppel as a basis for a cause of action. All Printing Resources, Inc. v. Goodyear Canada, Inc., 1998 WL 564605, at *6 (N.D. Ill. 1998) (citing cases). Another, more recent, Northern District case notes that

courts applying Illinois law remain divided on the issue of "whether Illinois allows equitable estoppel to be used as a 'sword' or only as a 'shield.'" Intern. Strategic Marketing, Inc. v. Zenith Intern., S.A., 2004 WL 546998, at *2 (N.D. Ill. 2004).   In light of the fact that the instant case arises outside of the insurance context, and considering the cases in which courts applying Illinois law have recognized equitable estoppel as a cause of action, the Court will allow GE to proceed on its equitable estoppel theory as an affirmative cause of action.   See All Printing Resources, Inc. v. Goodyear Canada, Inc., 1998 WL 564605, at *6.   Honeywell's request to dismiss Count 5 on this basis is denied.

Alternatively, Honeywell asserts that, if a cause of action for equitable estoppel exists, GE fails to adequately allege equitable estoppel.   A party asserting equitable estoppel:

> must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the

other person is permitted to deny the truth thereof.

Geddes, 751 N.E.2d at 1157.  Honeywell asserts that GE fails to allege facts

sufficient to satisfy the first and second required elements.  Specifically,

Honeywell contends that GE fails to allege a misrepresentation of material

fact or that Honeywell knowingly provided false certificates.  The Court

disagrees.

   As an initial matter, the Court notes that the only representation

alleged by GE with respect to Count 5 arises out of Honeywell's act of

providing the Exemption Certificates to Garrett Aviation.  The Exemption

Certificates are prospective in nature.  The Complaint expressly recognizes

this, in that it alleges that "[t]he first Exemption Certificate, dated February

27, 1998, applied to the period February 28, 1998 through May 4, 2000.

The second Exemption Certificate, dated May 4, 2000, applied to the

period May 5, 2000 to the present."  Complaint, ¶ 40.  Thus, as Honeywell

argues in its reply brief, GE could not have reasonably relied upon the

Exemption Certificates with respect to transactions prior to February 28,

1998.  Thus, GE's equitable estoppel claim is limited to the period from

February 28, 1998, forward.

   Turning to the sufficiency of the allegations of the Complaint, GE

alleges that Honeywell affirmatively represented that it was paying the applicable tax directly to the Department and that "[u]pon information and belief and contrary to its representations to Garrett Aviation in the Honeywell Exemption Certificates," Honeywell failed to pay the proper amount of SOT.  <u>Complaint</u>, ¶¶ 40, 43.  Construed in favor of GE, these allegations are sufficient to support a finding that Honeywell knew at the time that the representations were made that they were untrue. Honeywell's request to dismiss on this basis is denied.

Honeywell further asserts, in its reply brief, that GE's allegations involve only promises of future action, not existing facts.  "To be actionable, a false representation must generally relate to an existing or past event, not to a promise or prognostication concerning a future happening."  <u>Sinclair v. Sullivan Chevrolet Co.</u>, 202 N.E.2d 516, 518 (Ill. 1964)<u>; see also</u> <u>Intern. Strategic Marketing, Inc.</u>, 2004 WL 546998, at *2.  While the Exemption Certificates are prospective in nature, each Exemption Certificate provides that the "certificate shall be part of each order which we may hereafter give to you."  <u>Complaint</u>, Exs. 1a & 1b.  Therefore, the allegations of the Complaint could support a finding that, as orders were placed following the issuance of the Certificates, the representations in the Certificates were

incorporated into existing events.  Thus, it is not beyond doubt that GE could prove no set of facts that would entitle it to relief under an equitable estoppel theory for the period from February 28, 1998, forward. Honeywell's request to dismiss Count 5 is denied.[4]

G.    Count 6 – Unjust Enrichment

In Count 6, GE alleges that Honeywell benefitted from the MSP transactions and was obligated to pay tax on parts transferred incident to MSP services.  According to the Complaint, Honeywell has been unjustly enriched to the extent it has left GE to bear the burden of the tax due on the MSP transactions.  Specifically, GE alleges as follows:

> Given GE's payment to the Department of additional Service Occupation Tax of $4,150,179 and statutory interest of $1,233,823 on the MSP Transactions and without payment by Honeywell of the corresponding Service Use Tax plus accrued interest, Honeywell has been unjustly enriched and GE is thus entitled to recover from Honeywell the corresponding Service Use Tax and accrued interest.

Complaint, ¶ 108.

---

[4]In its reply brief, Honeywell argues that GE's equitable estoppel, implied indemnity, and negligent misrepresentation claims are barred for the period prior to February 27, 1998, because Honeywell had not provided Garrett Aviation with the Exemption Certificates prior to that date.  As set forth above, the Court finds that Counts 5 is limited to the period from February 28, 1998, forward.  Because the Court dismisses Counts 3 and 4 in their entirety on other grounds, the Court need not determine whether the claims in these counts should be limited to the period after February 27, 1998.

Thus, in this Count GE is proceeding under a quasi-contact theory, which arises when one party provides a benefit to another under circumstances in which it would be inequitable or unjust to allow the benefitted party to retain the benefit without compensating the other party. See Industrial Lift Truck Service Corp. v. Mitsubishi International Corp., 432 N.E.2d 999, 1002 (Ill. App. 1st Dist. 1982). In such circumstances, courts may impose a duty on the party that has benefitted to compensate the other party despite the lack of an actual contract. Id. However, "[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." Id. (citations omitted). Honeywell asserts that the relationship between GE and Honeywell was contractual, governed by the Operating Agreement. See Memorandum in Opposition, Ex. 2, Operating Agreement.[5] As a result, Honeywell contends GE is barred from recovering under a quasi-contract, unjust enrichment theory.

The Operating Agreement expressly provides that it and the

---

[5]The Court may consider the Operating Agreement without converting the Motion to Dismiss into a motion for summary judgment under Fed.R.Civ.P. 12(c) because it is both referred to in the Complaint and central to GE's claims. See Menominee Indian Tribe of Wisconsin, 161 F.3d at 456.

documents referenced within it contain the complete agreement between GE and Honeywell.  Memorandum in Opposition, Ex. 2, Operating Agreement, p. 20.  The Operating Agreement does not address the Service Use Tax issue.  Honeywell's alleged obligation to pay Service Use Tax relating to MSP Transactions arises by statute, is independent of the Operating Agreement, and is an obligation to the Department, not to GE.  If a serviceman collects Service Use Tax from the user of property acquired incident to a sale of services, that tax is held in trust for the Department.  Moreover, the Service Use Tax Act specifically provides that any Service Use Tax that is not paid to a serviceman "shall be paid to the Department directly" by the user of the property.  35 ILCS § 110/3-40.  Honeywell's obligation to pay Service Use Tax falls outside the subject matter of the Operating Agreement, and therefore, the Operating Agreement does not automatically bar GE's unjust enrichment claim.  Honeywell's request to dismiss Count 6 is denied.

THEREFORE, Defendant Honeywell International, Inc.'s Motion to Dismiss (d/e 5) is ALLOWED, in part, and DENIED, in part.  Counts 3 and 4 are DISMISSED for the reasons set forth above.  The Motion is denied in all other respects.

IT IS THEREFORE SO ORDERED.

ENTER:   April 13, 2006.

FOR THE COURT:

_____ s/  Jeanne E. Scott  _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE